IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION CORPORATION, | ) | CASE NO. 1:04 CV 1338 |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| Plaintiff, | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| BRADLEY E. ALLY, *et al.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

## I.  Introduction

Before the Court[1] in this diversity action[2] involving certain rights and duties under a gas lease[3] is a motion for summary judgment filed by defendants Bradley E. Ally and the Ally Family Revocable Living Trust (the Allys),[4] as well as a motion for partial summary judgment with respect to certain affirmative defenses filed by plaintiff Columbia Gas Transmission Corp. (Columbia Gas).[5]  Each party has responded to the motion filed by the

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge. ECF # 13.

[2] The plaintiff, Columbia Gas Transmission Corp., is incorporated in Delaware with its principal place of business in West Virginia.  ECF # 1 at ¶ 1.  The defendants, Bradley E. Ally and the Ally Family Revocable Living Trust, are citizens of Ohio.  The amount in controversy is asserted to be greater than $75,000.  Jurisdiction over such cases is conferred by 28 U.S.C. § 1332(a).

[3] ECF # 1.

[4] ECF # 42.

[5] ECF # 43.

opposing party[6] and each party has filed replies to those responses.[7]  The Court conducted a hearing on these motions on May 25, 2006.[8]  For the following reasons, partial summary judgment is granted to Columbia Gas concerning the affirmative defenses and, consequently, summary judgment is denied to the Allys.

## II.  Facts

The parties have stipulated to the relevant facts.[9]  Other facts are apparent in the documents stipulated to by the parties.

Columbia Gas holds a lease on rural property owned and occupied by the Allys in Richland County, Ohio.[10]  Pursuant to a 1937 supplement to that lease, which was originally created in 1928 for natural gas production,[11] Columbia has used the gas well on the Ally property for storage of natural gas.[12] The original 1928 lease provides that Columbia Gas may not drill for gas within 300 feet of any "barn or dwelling" on the property.[13]  The 1937 supplement gives Columbia Gas the right to "do such things as may be reasonably necessary

---

[6] ECF # 46 (the Allys' response in opposition); ECF # 47 (Columbia Gas's response).

[7] ECF # 49 (Columbia Gas's reply); ECF # 52 (the Allys' reply).

[8] ECF # 53.

[9] ECF # 40.

[10] *Id.* at ¶¶ 4-15.

[11] *Id.* at ¶ 6.

[12] *Id.* at ¶¶ 10-11.

[13] *Id.*, Ex. 12.

and convenient" for the purposes of storing and removing natural gas from the well on the Ally property.[14]

In 1988, the Allys placed a mobile home on the property within approximately 250 feet of the well with the prior permission of Columbia Gas.[15]  Subsequent to that 1988 agreement concerning the mobile home, the Allys have, without prior approval of Columbia Gas, replaced the mobile home with a permanent residence[16] and placed a garage, a barn, fencing and an out building within 300 feet of the Columbia Gas storage well on the property.[17]

Columbia Gas initiated the instant suit in 2004 with five claims for injunctive relief, declaratory judgment, breach of the lease, trespass and negligence.[18]  The suit seeks to have the Allys remove at their expense all structures within 300 feet of the well that allegedly encroach on the lease rights of Columbia Gas; to declare the right of Columbia Gas under the lease as supplemented to a 300 foot setback around the well; or, if Columbia Gas must close the storage well because the structures are not removed, to recover damages from the Allys.[19]

---

[14] *Id.*, Ex. 13 at ¶ 2.

[15] *Id.* at ¶¶ 18, 19.

[16] *Id.* at ¶ 23.

[17] *Id.* at ¶¶ 21, 22.  The date when the out building was constructed is not known.

[18] ECF # 1.

[19] *Id.*

The Allys, as noted, stipulate to fundamental facts but deny the validity of any claim for injunctive relief[20] and further assert the following affirmative defenses: failure to state a claim;[21] waiver;[22] a 300 foot setback violates the lease;[23] estoppel;[24] adverse possession;[25] unclean hands;[26] interference by Columbia Gas with the Allys' business relationships and enjoyment of the property;[27] the lease does not bar the Allys from building within 300 feet of the well;[28] the suit does not join necessary parties;[29] local usage and custom do not favor a 300 foot setback;[30] a 300 foot setback is not necessary for safety;[31] the Supplemental Agreement is not binding on the Allys;[32] and the Supplemental Agreement was not properly

---

[20] ECF # 37 at ¶ 6.

[21] *Id.* at ¶ 7.

[22] *Id.* at ¶ 8.

[23] *Id.* at ¶ 9.

[24] *Id.* at ¶ 10.

[25] *Id.* at ¶ 11.

[26] *Id.* at ¶ 12.

[27] *Id.* at ¶ 13.

[28] *Id.* at ¶ 14.

[29] *Id.* at ¶ 15.

[30] *Id.* at ¶ 16.

[31] *Id.* at ¶ 17.

[32] *Id.* at ¶ 18.

recorded.[33] The Allys also seek a declaration of rights under the lease stating that Columbia Gas is not entitled to a 300 foot setback and that, therefore, no current buildings need be removed and that future construction not be restricted by any 300 foot setback.[34]

Columbia Gas has moved for partial summary judgment on most of the asserted affirmative defenses raised by the Allys.[35] Essentially, Columbia Gas maintains that the basis for many of the affirmative defenses asserted by the Allys is in the context of a real property easement.  As such, Columbia Gas argues that the Allys' affirmative defenses of waiver, estoppel and adverse possession are all simply claims of adverse possession, which cannot be given effect as a matter of law in Ohio until such possession was "exclusive ... , open, notorious, continuous and [in] adverse use for a period of twenty-one years."[36]  Since there is no question here that any adverse possession has not been in effect for twenty-one years, Columbia Gas contends it is entitled to summary judgment.

It further asserts that the rest of the affirmative defenses subject to its motion are, when examined in light of the uncontroverted facts, deficient as a matter of law.

---

[33] *Id.* at ¶ 19.

[34] *Id.*, Counterclaim at ¶ 20.

[35] Columbia Gas did not raise in its motion for partial summary judgment the following asserted affirmative defenses: failure to state a claim; a 300 foot setback violates the lease; unclean hands; and a 300 foot setback is not required for safety.

[36] ECF # 43 at 6, quoting *Grace v. Koch*, 81 Ohio St. 3d 577, 580-81, 692 N.E.2d 1009, 1012 (1998).

The Allys seek summary judgment on the grounds that neither the 1928 lease[37] nor the1937 Supplemental Agreement[38] requires a 300 foot setback between the storage well and any building on the property[39] and that Columbia Gas is barred by laches from seeking to enforce any right to a 300 foot setback.[40] Laches is applicable here because, according to the Allys, Columbia Gas has known about the presence of structures within 300 feet of the well since 1988 (the garage) or 1992 (the house) and yet did nothing until the filing of this suit to enforce any purported right to a setback.[41]  The Allys also argue that any rights founded on the supplement to the lease should be found unenforceable since the supplement, although filed for record, was not referenced or indexed to the original lease and so was not discoverable, and constructive notice should not be applied to the Allys.[42]

Columbia Gas contends that the original lease, by prohibiting drilling within 300 feet of a structure, evidences the intent of the parties that the "necessary and convenient" area around the well should be 300 feet.[43] It further argues that this interpretation was ratified

---

[37] The Allys' motion misidentifies the original lease in several places as the "1927 lease" (ECF # 42 at 5). The parties' stipulation (ECF # 40 at ¶ 6) and the lease itself (ECF # 40, Ex. 12) show it was created in 1928.

[38] Again, the Allys' motion here misidentifies the date of the Supplemental Agreement as 1938 (ECF # 42 at 7).  The stipulations (ECF # 40 at ¶10) and the Supplemental Agreement (ECF # 40, Ex. 13) show it was entered into in 1937.

[39] ECF # 42 at 5-8.

[40] *Id*. at 8-10.

[41] *Id.*

[42] ECF # 46 at 5-6.

[43] ECF # 47 at 7.

when Harvey Ally, now deceased, sought a waiver of the 300 foot setback from Columbia

Gas in 1988 to put a mobile home 250 feet from the well.[44]  Moreover, Columbia Gas offered

the affidavit of a company storage engineer that a 300 foot setback from a natural gas storage

well is required to permit operation of emergency response crews and limit potential damages

in the event of a fire or gas leak.[45]

Columbia Gas also argues that any argument concerning laches is barred by Federal

Rule of Civil Procedure 8(c) for failure to specifically raise it in the answer[46] and that the

supplemental agreement is binding by virtue of being filed, with no requirement that it be

referenced or indexed on the original lease nor that the property owner actually saw it.[47]

In the reply briefs and at the hearing,[48] the parties have essentially framed the issues

before the Court as being:  (1) does the original lease as supplemented require as a matter of

law a 300 foot setback from the well; (2) if not, does the lease as supplemented, under the

language granting Columbia Gas the right to use "so much of said property as is necessary

and convenient" to store gas, permit Columbia Gas to create and enforce a safety zone or

setback around the well; (3) if so, how is the size of such zone or setback to be determined;

and finally (4) are there any impediments, either in the recording of the supplement or in the

---

[44] *Id.* at 8.

[45] ECF # 47-3 (affidavit of Brent Criser).

[46] ECF # 47 at 13-15.

[47] *Id.* at 19.

[48] ECF # 53.

actions of Columbia Gas to preclude enforcing any rights grounded in the lease as supplemented?

## III.   Analysis

*A.*    ***Summary judgment standard***

The standard for evaluating motions for summary judgment is well-established and well-known.  Federal Rule of Civil Procedure 56(c) provides in pertinent part:

> The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case.[49] Once the moving party satisfies its burden, "the burden shifts to the non-moving party to set forth specific facts showing a triable issue."[50]

Determination that there is a dispute as to an issue of material fact requires the application of evidentiary standards.[51]  However, "[a] non-moving party need not 'produce evidence in a form that would be admissible at trial in order to avoid summary judgment.' Instead, the relevant inquiry is whether the nonmoving party has designated 'specific facts

---

[49] *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

[50] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

[51] *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

-8-

showing there is a genuine issue for trial.'"[52] Nonetheless, the non-moving party may not simply rely on the mere allegations of the pleading.[53] Courts are to evaluate all the evidence presented "in the light most favorable to the party opposing the motion."[54]

Under Ohio law, which is applicable in this diversity case inasmuch as the dispute concerns a purported easement on real property in Ohio,[55] "the extent and limitations of an easement created by an express grant are to be ascertained from the language of the grant and the circumstances surrounding the transaction."[56] Ohio law provides that such a grant is to be considered as a contract for purposes of its construction.[57] Accordingly, contract interpretation is a question of law.[58] Where language is clear and unambiguous, courts may

---

[52] *O-So Detroit, Inc. v. Home Ins. Co.*, 973 F.2d 498, 505 (6th Cir. 1992) (internal citation omitted).

[53] *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[54] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[55] *Swango Homes, Inc. v. Columbia Gas Transmission Corp.*, 806 F. Supp. 180, 184 (S.D. Ohio 1992). *Swango Homes* also holds that where diversity jurisdiction is established, it is not necessary to reach any claim of federal jurisdiction as asserted here under the Natural Gas Pipeline Safety Act, 49 U.S.C. § 1671 *et seq*. provided that the applicable state law under diversity jurisdiction is not inconsistent with the federal scheme created by the Act. *See*, *id*. at n.2.

[56] *Id.*

[57] *Columbia Gas Transmission Corp. v. Zeigler*, 83 F. App'x 26, 29 at n.4 (6th Cir. 2003).

[58] *Id.*

not, in effect, create a new contract by finding something not expressed in the language employed by the parties.[59]

In the end, as the Sixth Circuit recently stated, summary judgment is designed to allow the movant to "challenge the opposing party to 'put up or shut up' on a critical issue."[60]

## B.      *The lease and supplement*

Both the Complaint and the Answer and Counterclaim seek a declaration of rights under the original oil and gas lease.[61]  The Allys have moved for summary judgment in their favor as to both Columbia Gas's claim and their counterclaim.[62]  Columbia Gas, however, did not move for summary judgment on its underlying claim for a declaratory judgment, moving instead for partial summary judgment as to the Allys' affirmative defenses. Columbia Gas has asserted in its reply brief to the Allys' motion for summary judgment that its opposition to the Allys' motion demonstrates that, "if the Court is disposed to issue a declaratory judgment," it is entitled to a declaration that the lease provides for a 300 foot setback.[63]

Notwithstanding the invitation by Columbia Gas, the Court finds that, in order to rule on the Allys' motion for summary judgment on their claim seeking a declaratory judgment

---

[59] *Id.*

[60] *BDT Products, Inc. v. Lexmark Int'l, Inc.*, 124 F. App'x 329, 331 (6th Cir. 2005).

[61] *See*, ECF # 1 at ¶¶ 36-37 (Complaint); *and see*, ECF # 21 at ¶ 31(1) (Amended Answer).

[62] ECF # 42.

[63] ECF # 47 at 3.

of the parties' rights under the lease as supplemented, it is necessary to find, as a matter of law, what is provided for by those agreements and if the agreements are valid and enforceable against the parties.  Inasmuch as the parties have stipulated that the original lease was duly recorded and is binding on both sides,[64] and since the Court will address in detail below its finding that the supplemental agreement was properly filed and is binding, the Court will now address the issue of what is provided for in both the original lease and the supplemental agreement that is relevant to this case.

The original lease, executed in 1928,  provides that the Ohio Fuel Gas Company, which later merged with Columbia Gas,[65] may drill for and operate natural gas wells on the Ally property, using "so much of said property as is necessary and convenient" for removing natural gas for a period of twenty years and "so much longer thereafter" as natural gas is produced "in paying quantities."[66]  The lease further states that "no well shall be drilled within 300 feet of the barn or dwelling on said premises" without the consent of the Allys.[67]

Pursuant to that lease, the parties stipulate that a well, now denominated as Well 6111, was drilled on the Allys' property prior to 1937.[68]  In 1937, a supplemental agreement was executed by the parties whereby Columbia Gas was granted "the additional right from time

---

[64] ECF # 40 at ¶¶  6-9.

[65] ECF # 40 at ¶ 8.

[66] ECF # 40, Ex. 12.

[67] *Id.*

[68] ECF # 40 at ¶ 10.

to time to inject gas of any kind for storage" and "to do such other things as may be reasonably necessary and convenient for such purpose."[69] The supplemental agreement further states that, except as "specifically modified, enlarged and extended," the terms of the original lease shall continue in full force and effect between the parties.[70]

Initially, the Court observes that the contract here is, as noted by the parties, very similar to that interpreted by the Sixth Circuit in *Zeigler*.[71]  In *Zeigler*, the Sixth Circuit began, as previously noted, by accepting that the contract at issue was a lease that created an express grant of easement.[72]  It then noted that in Zeigler's case, as here, the original lease "expressly prohibits the lessee (Columbia) from drilling a well within 300 feet of the barn or house then located on the property."[73]  The Court then noted that the supplemental agreement in that case, as in this one, gave Columbia Gas the right to inject gas for storage and to "do such other things as be reasonably necessary and convenient for such purpose."[74]

While the Sixth Circuit found that neither the original lease nor the supplemental agreement mandated a 300-foot-radius setback around a storage well, the Sixth Circuit found that Columbia Gas had under the "necessary and convenient" language of the supplemental

---

[69] *Id.*

[70] *Id.*

[71] *Zeigler*, 83 F. App'x 26 (6th Cir. 2003).

[72] *Id.* at 29.

[73] *Id.*

[74] *Id.* at 30, quoting supplemental agreement.

-12-

agreement, the right to call for a "reasonably necessary and convenient" setback around a storage well maintained under that easement.[75]

Given that determining what is "reasonably necessary and convenient" as a setback around a natural gas storage well is "particularly fact-sensitive," the Court found that the District Court properly gave effect to the parties' agreement by taking testimony on that issue before deciding the matter.[76]

After carefully reviewing the lease documents here, as well as considering the arguments advanced by the parties in the briefs and at the hearing, the Court finds that the reasoning in *Zeigler* is dispositive in this case.

First, the Court finds that the assertion by Columbia Gas that it is entitled to a 300 foot setback as a matter of law based on the language in the original agreement is not persuasive. That 300 foot setback in the original lease concerned drilling for gas and not, as is the case now, the storage of gas. That distinction was evidently so important as to induce the parties to execute the supplemental agreement.

More importantly, the 300 foot setback of the original lease was, by its own terms, for the benefit of and under the control of the property owner, not the gas company.[77] As such, it is inconsistent for Columbia Gas to now maintain that a 300 foot setback was agreed upon by both parties in the original lease as necessary for safe operations and should now be

---

[75] *Id.*

[76] *Id.* at **3.

[77] ECF # 40, Ex. 12. No well shall be drilled within 300 feet of the house and barn "without the consent of the *lessor*." (Emphasis added.)

-13-

enforceable against the property owner when the property owner has the clear right under that lease to agree to a lesser distance.  Thus, it is arguable in construing the terms of the original lease that since the setback was under the control of the property owner, the Allys could here claim the right to waive any 300 foot buffer created by the original lease for their convenience and, in essence, now "permit" drilling operations at the well to exist closer than 300 feet from their home.[78]

Rather, as *Zeigler* found, it is the supplemental agreement's grant to Columbia Gas of the right to do what is "reasonably necessary and convenient" for the storage of natural gas that establishes a right by Columbia Gas to create so much of a setback as can be proven to be reasonably necessary and convenient.[79]  Moreover, as will be explained more fully below, the Court further concludes that the supplemental agreement is valid and binding on the Allys.

---

[78] *See*, ECF # 52 at 4 (the Allys' reply brief).  The distinction, however, would still exist that the present storage well is not a drilling operation contemplated in the original lease.

[79] The Court here does not consider the affidavit of Brent Criser (ECF # 47, Ex. B), offered by Columbia Gas, to require a 300 foot setback.  Without prejudging their merit in a future trial, the affidavits were submitted in response to the Allys' motion for summary judgment seeking a declaration of rights under the lease.  As explained, the Court finds, without requiring the affidavits, that the supplemental agreement is valid and binding and, by its terms, confers a right on Columbia Gas to establish a reasonable setback as is necessary and convenient for its storage well.  Determining the scope of such a setback is a highly fact-sensitive issue that was not raised by any summary judgment motion from Columbia Gas, nor is it inherent in the Allys' motion.  Accordingly, since the matter of the size of a reasonable "necessary and convenient" setback is not now before the Court and is properly one for trial, the Criser affidavit is premature and is not addressed herein.

Accordingly, the Court finds that, pursuant to *Zeigler*, Columbia Gas has a binding right to establish a reasonably necessary setback around Well 6111 pursuant to the supplemental agreement, the dimensions of such setback to be determined as a question of fact at trial. Therefore, the Allys' motion for summary judgment in their favor is denied as to both the claim of Columbia Gas and their counterclaim insofar as those claims are inconsistent with this finding.

## C.    *The affirmative defenses*

Columbia Gas has specifically sought summary judgment as to nine of the thirteen named affirmative defenses pled by the Allys and has, in addition, contested the applicability of laches, which was not specifically pled but has been argued as an affirmative defense.

The Court will consider the affirmative defenses, including laches, in four groups as follows:

1.    Jurisdictional defenses

      a.    Failure to state a claim;

      b.    Failure to join necessary parties.

2.    Legal defenses

      a.    Supplement to the lease was not properly filed;

      b.    Supplement to the lease does not bind the Allys;

      c.    Adverse possession.

3.     Equitable defenses

     a.     Waiver;

     b.     Estoppel;

     c.     Unclean hands;

     d.     Laches.

4.     Contingent defenses

     a.     A 300 foot setback is not necessary for safety;

     b.     A 300 foot setback is not supported by local use or custom;

     c.     Columbia Gas' actions would interfere with the Allys' use of the property and business relationships;

     d.     A 300 foot setback violates the lease;

     e.     The lease does not bar construction of buildings within 300 feet of the well.

*1.     Jurisdictional defenses*

These defenses purport to assert the presence of a jurisdictional impediment in that either there is not a justiciable claim[80] or that necessary parties are not before the Court.[81] However, as noted by Columbia Gas, the Allys have failed to indicate what necessary party is not now before the Court.

Moreover, although Columbia Gas has not addressed it, the Allys have also failed to indicate how the claim by Columbia Gas fails to state a claim upon which relief can be

_____

[80] Fed. R. Civ. P. 12(b)(6).

[81] Fed. R. Civ. P. 12(b)(7).

granted, particularly when, as here, the Court has found a valid agreement establishing a right in Columbia Gas to a reasonable setback at Well 6111.

Accordingly, the motion for partial summary judgment in  regard to the failure to join a necessary party is well-taken and is granted to Columbia Gas.  There being no motion in respect of the asserted defense of failure to state a claim, the Court makes no ruling but notes that, given the prior finding on the agreement, the defense appears to be moot.

2.    *Legal defenses*

The Allys make three arguments that would preclude the granting of any relief to Columbia Gas as a matter of law: (1) the supplement to the lease was not properly recorded, (2) the supplement is not binding on the Allys, and (3) any claim by Columbia Gas has been extinguished by adverse possession.

a.    Recording and notice

The first two legal arguments rest on an assertion by the Allys that the 1937 supplement to the lease was not properly recorded because the original 1928 lease it supplemented, or the recorder's index where the original lease could be found, was not marked to indicate that a supplemental filing existed.  Consequently, it is argued, the Allys had no actual notice, nor any basis for constructive knowledge, of that supplement and should not be bound by any terms therein.

First, the supplemental agreement, a copy of which is attached to the stipulations,[82] appears to have been recorded in Richland County as evidenced by a records certificate

---

[82] ECF # 40, Ex. 13.

stamped on the last page of that supplemental agreement by the Richland County Recorder.[83] Although the Allys have apparently chosen not to stipulate to that fact,[84] neither have they contested it.

Ohio law is clear that a purchaser of real property is charged with constructive notice of all prior recorded conveyances within the chain of title to his property.[85] Ohio statute provides that a lease granting the right to drill for natural gas is to be filed in the lease book of the county recorder of the county wherein such land is located[86] and that when so recorded in the lease book it is constructive notice to all subsequent purchasers.[87] Ohio law also provides that "[f]ailure to discover an instrument within the chain of title, even though improperly recorded by a county recorder, will not negate constructive notice."[88]

In addition, Ohio law states that the recorder shall maintain an alphabetical index of the names of both parties to instruments recorded in the county.[89] Moreover, pursuant to

---

[83] *Id.*

[84] *See*, ECF # 43 at 7, n.4.

[85] *Tiller v. Hinton*, 19 Ohio St. 3d 66, 68, 482 N.E.2d 946, 949 (1985).

[86] *See*, Ohio Rev. Code § 5301.09; *see also*, *Back v. Ohio Fuel Gas*, 160 Ohio St. 81, 113 N.E.2d 865 (1953) (construing similar predecessor statute Ohio Gen. Code §§ 8518, 8519).

[87] *Back*, 160 Ohio St. at syl. 2.

[88] *Columbia Gas Transmission Corp. v. Bennett*, 71 Ohio App. 3d 307, 315, 594 N.E.2d 1, 6 (1990) (citation omitted) (mistakenly filing a gas lease in the deed book does not alter that it is constructive notice). However, where the county recorder mistakenly describes the affected property of a purported gas lease, such a conveyance "is not within the chain of title and does not provide constructive notice to subsequent bona fide purchasers." *Id.*

[89] Ohio Rev. Code § 317.18.

Ohio law, counties may, but are not required to, have a sectional index by which recorded leases may be referenced to the underlying parcel in terms of its original surveyed section.[90] There is nothing before the Court to indicate that Richland County maintains such a sectional index.  However, Ohio law has long recognized that "the failure of a recorder to index, or to properly index a document does not destroy the constructive notice arising from the proper filing of the document."[91]

Here, as noted, the supplemental lease document itself shows that it was recorded in the Richland County Record of Leases on April 12, 1937 and was certified by the Recorder to be on file there in February of 2006.[92]  As also noted, that filing, in the correct book, is of itself, by law, considered constructive notice of the lease, regardless of any failure or mistake in indexing.

Accordingly, the Court finds that summary judgment is proper in favor of Columbia Gas as to the asserted defenses that the supplemental lease was not properly filed or that, for lack of actual or constructive notice, it is not binding on the Allys.

b.      Adverse possession

The Allys maintain that, should a valid claim for a setback in favor of Columbia Gas exist in the lease or the supplement, it has been extinguished by the adverse possession of the

---

[90] *See*, Ohio Rev. Code § 317.20.

[91] *Hobart Mfg. Co. v. Klosterman,* 58 Ohio App. 310, 312, 16 N.E.2d 581, 582 (1938) (citing *Green v. Garrington*, 16 Ohio St. 548 (1866)).

[92] ECF # 40, Ex. 13.

area of setback for years by the Allys, as evidenced by the construction of the various structures.

As previously stated, Columbia Gas contends that adverse possession in Ohio requires several elements, among them being open, exclusive and continuous adverse possession of the property for a period of twenty-one years.[93]  Here, the evidence is undisputed that the house, the garage, the barn and the fence – which are now alleged to encroach on the setback – were constructed less than twenty-one years ago and so may not form the basis for a claim of adverse possession.[94]  Moreover, the out building, for which the construction date is unknown, also may not form the basis of an adverse possession since, without "clear and convincing" evidence of the date of construction, the Allys cannot prove that they have had for twenty-one years exclusive, open, notorious, continuous and adverse use of the property on which the out building sits.[95]

Therefore, the motion for partial summary judgment as to this affirmative defense is well-founded, and summary judgment in this respect is granted to Columbia Gas.

*3.*     *Equitable defenses*

The Allys assert the equitable defenses of waiver, estoppel, unclean hands and laches. Columbia Gas maintains that these defenses are inapplicable and, in the case of laches, not properly pled.

---

[93] *Grace*, 81 Ohio St. 3d at 580-81, 692 N.E.2d at 1012.

[94] *See*, ECF # 43 at 6.

[95] *Grace,* 81 Ohio St. 3d at 580-81, 692 N.E.2d at 1012.

a.      Waiver

Waiver in Ohio law is "the voluntary relinquishment of a known right."[96] The "party seeking to prove the waiver must do so by showing a clear, unequivocal, decisive act by the other party of such a purpose that it amounts to an estoppel on that party's part."[97]

Here, the Allys have offered no evidence that Columbia Gas voluntarily took any "clear, unequivocal, decisive act" to relinquish a known right to a setback on the Ally property save for its alleged silence for a period of less than twenty-one years in the face of alleged encroachments.

It has long been settled that mere silence will not be sufficient to establish a waiver where one is not bound to speak.[98] Given that any encroachment could not ripen into adverse possession and consequent loss of rights on any setback until the passage of twenty-one years, the Allys have not shown what legal obligation Columbia Gas had to speak sooner than it did concerning the encroachments. Without a legal obligation to speak, any mere silence by Columbia Gas for some lesser period of time cannot be the basis of a waiver of rights by Columbia Gas concerning any setback under the lease as supplemented.

Therefore, in the absence of such evidence, the motion for partial summary judgment as to the affirmative defense of waiver is granted in favor of Columbia Gas.

---

[96] *State ex rel. Ryan v. State Teachers Ret. Sys.*, 71 Ohio St. 3d 362, 368, 643 N.E.2d 1122, 1127 (1994) (citation omitted).

[97] *City of North Olmsted v. Eliza Jennings, Inc.*, 91 Ohio App. 3d 173, 180, 631 N.E.2d 1130, 1134-35 (Ohio App. 8th Dist. 1993) (citation omitted).

[98] *See*, *List & Son Co. v. Chase*, 80 Ohio St. 42, 49, 88 N.E. 120, 122 (1909).

b.      Estoppel and laches

The Allys maintain that Columbia Gas should be estoped from asserting its rights under any setback easement because they permitted the Allys to take actions contrary to any easement.  They argue that Ohio law permits an easement to be extinguished by contrary conduct by the easement holder which, when relied upon by another to his detriment, estops the original holder from enforcing the easement.[99]

It is clear that, contrary to the Allys' contention, estoppel may preclude the enforcement only of an easement created by prescription, not of a granted and recorded easement.[100]  The same is true for laches.[101]

Accordingly, the motion for partial summary judgment as to the asserted affirmative defenses of estoppel and laches is well-founded, and summary judgment is granted to Columbia Gas on these grounds.

c.      Unclean hands

The Allys contend that Columbia Gas should not be permitted to enforce any rights against the Allys because it has unclean hands.  They do not state any basis for this defense, nor does Columbia Gas specifically move to be granted summary judgment on it.

Accordingly, without a motion before it in this regard, the Court makes no findings.

---

[99] *See*, ECF # 46 at 2-3.

[100] *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska*, 2005 WL 1538259, at *7 (Ohio App. Dist. 11 June 30, 2005).  "[E]quity does not acknowledge the extinguishment of such [expressly granted] easements by recourse to estoppel or laches."  (Citation omitted.)

[101] *Id.*

4.      *Contingent defenses*

The Allys have asserted five defenses that are essentially contingent on the Court either finding that the lease requires a 300 foot setback or, now, considering the imposition of such a setback: (1) such a setback is not needed for safety, (2) such a setback is not supported by local use or custom, (3) such a setback violates the lease, (4) such a setback would not bar construction within the area of the setback, and (5) such a setback in favor of Columbia Gas would interfere with the Allys' use and enjoyment of their property and with their business relationships.

Columbia Gas maintains that the argument based on local use and custom, as well as the argument founded on interference with the Allys' rights, does not state recognizable defenses to a claim to enforce a grant of an easement.[102]  Columbia Gas makes no motion with respect to the remaining elements listed here.

As noted, these asserted defenses are essentially contingent on the Court either finding that a 300 foot setback is required by the existing agreements or determining that a 300 foot setback must be now imposed by operation of the agreements.  However, since the Court has done neither, these arguments remain contingent and inchoate, with any potential relevance only if a 300 foot setback is presented as being "necessary and convenient" to the operation of a gas storage well during trial.  Consequently, the Court finds that, since the predicate contingency has not occurred, there is now no issue before it for resolution.

---

[102] *See*, ECF # 49 at 6-8.

**IV.  Conclusion**

Accordingly, summary judgment is hereby granted in part and denied in part, as more fully set forth above.

Dated:  August 28, 2006                          s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge